**2023-1176, 2023-1177**

# United States Court of Appeals
# for the Federal Circuit

DDR HOLDINGS, LLC,

*Plaintiff-Appellant,*

– v. –

PRICELINE.COM LLC, BOOKING.COM B.V.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Delaware, Cases Nos. 1-17-cv-00498 and -00499,
Chief Judge Colm F. Connolly

## REPLY BRIEF FOR APPELLANT DDR HOLDINGS, LLC

IAN B. CROSBY
SUSMAN GODFREY LLP
401 Union Street, Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
icrosby@susmangodfrey.com

LOUIS J. HOFFMAN
HOFFMAN PATENT FIRM
7689 East Paradise Lane, Suite 2
Scottsdale, Arizona 85260
Telephone: (480) 948-3295
louis@valuablepatents.com

SHAWN D. BLACKBURN
MENG XI
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 653-7822
Telephone: (713) 653-7851
sblackburn@susmangodfrey.com
mxi@susmangodfrey.com

*Attorneys for Appellant*

JULY 14, 2023

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................... 1

I.    The incorporated provisional application explicitly defines "merchants" as purveyors of "goods" or "services." ........................................................... 2

     A.    Either the file history or specification may establish lexicography. ..................................... 4

     B.    DDR's proposed construction is not inconsistent with the provisional application's definition of "merchants." ................................................. 6

     C.    Accepting lexicography regarding "merchants" does not "favor the provisional over the nonprovisional." ......................................... 10

     D.    Whether the words "services" and "products" are distinct or overlapping has no bearing on lexicography. ................................................. 12

II.   Appellees cannot establish superseding lexicography based on a description of a preferred embodiment. ............. 13

     A.    Appellees present a circular argument and improperly rely on a description of a preferred embodiment. ................................................. 14

     B.    Appellees fail to show clear and explicit evidence that patentee intended to define merchants as dealing in "goods" to the exclusion of "services." ................................................ 17

     C.    *MPHJ* does not support appellees' arguments. ........... 20

     D.    *Finjan* undermines appellees' arguments. .................. 22

E.    The PTAB and the District Court correctly rejected appellees' "superseding lexicography" argument. ..................................................... 24

III.   Appellees' arguments regarding the "plain and ordinary meaning" of "merchants" are irrelevant. .............. 25

A.    Usage by skilled artisans demonstrates that "merchants" deal in goods and services. ...................... 26

B.    The District Court's equation of "goods" and "products" was erroneous. ........................................... 26

IV.   This Court's resolution of the construction of "merchants" also resolves the construction of "commerce object." ................................................. 29

V.    Conclusion ........................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*3M Innovative Properties Co. v. Tredegar Corp.*,
   725 F.3d 1315 (Fed. Cir. 2013) ............................................................ 4

*Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*,
   674 F.3d 1365 (Fed. Cir. 2012) ........................................................ 2, 5

*Apple Inc. v. Wi-LAN Inc.*,
   25 F.4th 960 (Fed. Cir. 2022)............................................................. 17

*Biogen MA Inc. v. EMD Serono, Inc.*,
   976 F.3d 1326, 1336 (Fed. Cir. 2020) ............................................... 22

*Carrum Techs., LLC v. Unified Pats., LLC*,
   No. 2020-2204, 2021 WL 3574209 (Fed. Cir. Aug. 13,
   2021)..................................................................................................... 9

*DNA Genotek Inc. v. Spectrum Solutions L.L.C.*,
   No. 3:21-CV-00516, 2022 WL 17331255 (S.D. Cal. 2022).................. 21

*Dr. Falk Pharma GmbH v. GeneriCo, LLC*,
   774 F. App'x 665 (Fed. Cir. 2019)..................................................... 25

*Ethanol Boosting Sys., LLC v. Ford Motor Co.*,
   No. 2021-1949, 2022 WL 2798395 (Fed. Cir. July 18, 2022) ............ 19

*Finjan LLC v. ESET, LLC*,
   51 F.4th 1377 (Fed. Cir. 2022).................................................. passim

*GE Lighting Sols., LLC v. AgiLight, Inc.*,
   750 F.3d 1304 (Fed. Cir. 2014) ................................................. passim

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) ........................................................... 9

*Jack Guttman, Inc. v. Kopykake Enter., Inc.*,
   302 F.3d 1352 (Fed. Cir. 2002) ........................................................... 5

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999) ............................................................. 10

*Kumar v. Ovonic Battery Co.*,
  351 F.3d 1364 (Fed. Cir. 2003) ......................................................... 18

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
  672 F.3d 1350 (Fed. Cir. 2012) ........................................................... 8

*MPHJ Technology Investments, LLC v. Ricoh Americas
  Corporation*,
  847 F.3d 1363 (Fed. Cir. 2017) ................................................... 20, 21

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
  884 F.3d 1350 (Fed. Cir. 2018) ......................................................... 24

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................ 15, 24, 25, 26

*Praxair, Inc. v. ATMI, Inc.*,
  543 F.3d 1306 (Fed. Cir. 2008) ........................................................... 8

*Renishaw PLC v. Marposs Societa' per Azioni*,
  158 F.3d 1243, 1249 n.13 (Fed. Cir. 1998) ....................................... 18

*Shire Dev't, LLC v. Watson Pharms., Inc.*,
  848 F.3d 981 (Fed. Cir. 2017) ...................................................... 4, 5, 6

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
  511 F.3d 1132 (Fed. Cir. 2007) ......................................................... 17

*Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*,
  No. 416CV00812ALMKPJ, 2017 WL 4867620, at *6 (E.D.
  Tex. Oct. 27, 2017) ............................................................................ 21

*Thorner v. Sony Computer Ent. Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) .................................................... 3, 16

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
  595 F.3d 1340 (Fed. Cir. 2010) ......................................................... 16

## INTRODUCTION

This is a straightforward case. When a patentee sets forth a clear and explicit definition of a claim term, that definition controls. Here, the provisional application contains a clear and explicit statement that "merchants" are "*defined as* producers, manufacturers, and select distributors of *products or services* ...." Appx0876 (emphasis added). Patentee expressly incorporated that definition in the issued '399 Patent and never superseded or disclaimed it. That definition controls.

Following the district court, Appellees wrongly treat a reference to merchants as sellers of "goods" in a *description* of a *preferred embodiment* as a definition. But that reference is not a definition or disclaimer. And Federal Circuit precedent forbids importing limitations derived from a description of a preferred embodiment into claim terms. The description of an embodiment thus cannot supersede the incorporated definition of "merchants" as dealing in "products or services." Appx0876.

This Court should vacate the district court's incorrect constructions and adopt DDR's proposed definitions of "merchants" and "commerce object," specifically confirming that those constructions include "services."

1

## I.    The incorporated provisional application explicitly defines "merchants" as purveyors of "goods" or "services."

When a patentee clearly sets out a definition of a claim term in *either* the specification or prosecution history, that definition governs. *See Advanced Fiber Techs. (AFT) Tr. v. J & L Fiber Servs., Inc.*, 674 F.3d 1365, 1374 (Fed. Cir. 2012). Patentee here clearly "defined" "merchants" as "producers, manufacturers, and select distributors of *products or services ...*" in the provisional application, Appx0876 (emphasis added), which is both part of the file history and by incorporation part of the specification of the '399 Patent.

As to file history, Appellees *concede* that the statement in the provisional that merchants are purveyors of both goods *and* services qualifies as an explicit definition of "merchants." *See* Resp. Br. at 15 (discussing "the nonprovisional's definition of merchants").

This Court has long held that "definitions in any incorporated patents or references are *a part of the host patent.*" *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1382 (Fed. Cir. 2022). By incorporating the provisional into the as-issued specification, patentee preserved its express lexicographic choice to define "merchants" as purveyors of both goods *and* services. *See* Appx0086 (1:14–15 "incorporat[ing] by reference"

2

the provisional application); Appx0876 (provisional application defining merchants as purveyors of "products or services ...").

Appellees cite this Court's decision in *Finjan*, 51 F.4th at 1382, for the proposition that "the incorporation by reference of, for example, one patent into another 'does not convert the invention of the incorporated patent into the invention of the host patent.'" *See* Resp. Br. at 17. But Appellees misapprehend *Finjan*, *see infra* II.D, which expressly reaffirmed this Court's long-held rule that "definitions in any incorporated patents or references are *a part of the host patent*." *Finjan*, 51 F.4th at 1382 (emphasis added). The explicit definition set out in the provisional is part of the as-issued specification.

Once a patentee has shown the "clear and explicit" definition required for lexicography, that definition governs unless patentee explicitly disclaims that definition. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1367–68 (Fed. Cir. 2012). The standards governing lexicography and disclaimer are equally exacting, *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014), and Appellees do not contest DDR's point that this Court has *never* held that a patent owner can disclaim an explicit definition implicitly, *see* Op. Br.

3

at 14. Instead, this Court has repeatedly declined to "rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be *unless* a patentee limited or surrendered claim scope through a *clear and unmistakable* disavowal." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1322 (Fed. Cir. 2013) (emphasis added). DDR never disclaimed or disavowed the provisional's definition; to the contrary, in the file history, DDR repeated that definition. Op. Br. at 19.

Because both the file history and the specification clearly define "merchants" as purveyors of goods *and* services, and because there is no explicit disclaimer of that definition in the nonprovisional or evidence that DDR clearly chose to claim only "goods" to the exclusion of "services," the provisional definition controls.

## A.    Either the file history or specification may establish lexicography.

Appellees contend that lexicography requires "*both* 'the *specification and prosecution* history to unmistakably manifest' a definition other than the plain and ordinary meaning." Resp. Br. at 20 (quoting *Shire Dev't, LLC v. Watson Pharms., Inc.*, 848 F.3d 981, 984

(Fed. Cir. 2017) (emphasis added)). But Appellees' reliance on *Shire* is misplaced.

What *Shire* actually held was that using "consisting of," or "consists of," created "a very strong presumption that that claim element is 'closed' and therefore 'exclude[s] any elements, steps, or ingredients not specified in the claim.'" *Shire*, 848 F.3d at 984. "Overcoming this presumption … requires the specification and prosecution history to unmistakably manifest an alternative meaning, *such as when the patentee acts as its own lexicographer*." *Id.* (cleaned up and emphasis added).[1]

*Shire* did not modify the rule that lexicography can be established *either* through the file history *or* the specification. *See AFT*, 674 F.3d at 1374. Rather *Shire* described the sources of evidence that could overcome the presumption regarding a patentee's use of "consists / consisting of."[2]

---

[1] Appellees also cite *Jack Guttman, Inc. v. Kopykake Enter., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002), where the Court held that "the definition of photocopy machine provided in the specification does indeed dispose of the claim construction dispute." 302 F.3d at 1360. The phrase Appellees quote—"because no other intrinsic evidence casts doubt," *id.*; *see* Resp. Br. at 20—is merely dicta noting that patentee in that case had not disclaimed the express definition.

[2] The '399 Patent uses some version of the phrase "consist(s) of" six times, Appx0539 (3:41, 3:50); Appx0540 (5:51); Appx0547 (19:3, 19:12); Appx0548 (21:61), but never in relation to either "merchants" or

Regardless, here the provisional application's explicit definition of "merchants" and subsequent incorporation of that definition in the nonprovisional (and reference to the same definition later in the file history) would satisfy a "both-type" standard.

## B. DDR's proposed construction is not inconsistent with the provisional application's definition of "merchants."

Appellees argue that DDR cannot have acted as a lexicographer because DDR proposed a construction below that does not match word-for-word the definition contained in the provisional. DDR's proposal below, however, emanated from an iterative and fluid *Markman* process and recorded the parties' *agreement* on construction questions unrelated to the issue of "goods" or "services." Indeed, except as to the question of whether "merchants" can sell services *as well as* goods, DDR simply adopted the relevant part of *Appellees'* proposal.[3] *See* Appx0580–0583

"commerce object." All uses of that phrase occur during a description of a preferred embodiment, and none of those uses are at issue.

[3] The district court also rejected Appellees' proposed addition of the phrase "through the outsource provider" to the construction of "merchants," *see* Appx1415, and it is not at issue in this appeal. The agreed-on construction (excluding the "services" issue) also mirrored a construction adopted by the PTAB. Appx0748–0749.

(joint *Markman* brief noting Defendants' proposed construction of merchants as "producers, distributors, or resellers of the goods ..."). Appellees do not identify any *substantive* difference between the provisional's definition and DDR's proposed construction, so DDR's proposed construction—which attempted to minimize the daylight between the parties' original competing constructions—is neither inconsistent with the provisional's definition nor somehow improper. DDR attempted to crystallize the *Markman* issue by obviating non-substantive fights over wording, and the Court should not penalize DDR for its attempt to distill the dispute on claim construction to its dispositive core.

Appellees do not argue that there is any substantive difference between the provisional definitions and DDR's proposed construction, because there is none. The provisional defines "merchants" as "producers, manufacturers, and select distributors of products or services," Appx0876, and DDR's proposed construction of the same term is "producers, distributors, or resellers of the goods or services to be sold," Appx0004. DDR has shown that "products" means "goods or services," *see* Part III.B below, so "products or services" equates to "(goods or services)

or services," which matches DDR's proposed construction, "goods or services."

Appellees are also incorrect because this Court remains free to adopt the definition from the provisional as the correct construction, regardless and in lieu of DDR's partial adoption of the parties' joint proposal. *See, e.g., Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1359 (Fed. Cir. 2012) ("We are not bound by the arguments of the parties, however, and neither was the district court."); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1323–24 (Fed. Cir. 2008) *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) ("Because the court has an independent obligation to construe the terms of a patent, we need not accept the constructions proposed by either party.").

Because DDR's arguments on appeal are not inconsistent with its arguments before the district court, there is no waiver. Below the parties briefed the question of lexicography in the provisional and discussed it at the *Markman* hearing, so the record on appeal is "properly crystallized around and responsive to" this issue. *See Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001); Appx0585

8

(defendants' section of joint *Markman* brief discussing lexicography); Appx0596–0598 (DDR's section of joint *Markman* brief discussing definition in provisional); Appx1410–1421 (transcript of *Markman* hearing in which district court discusses the construction of "merchants" and notes, *inter alia*, "[e]ffectively, the plaintiff[] is seeking lexicography …"); Appx1601 (DDR's slide at *Markman* hearing noting that provisional provided a definition while nonprovisional did not).[4] This Court thus can adopt the exact definition in the provisional or DDR's proposal containing agreed-upon wording revisions and unrelated clarifications. As those do not substantively differ, DDR would accept either result.

---

[4] This Court has characterized this issue as "forfeiture" rather than "waiver" but sometimes has used those terms interchangeably. *See Carrum Techs., LLC v. Unified Pats., LLC*, No. 2020-2204, 2021 WL 3574209, at *5 (Fed. Cir. Aug. 13, 2021) (noting that "[f]orfeiture is the failure to make the timely assertion of a right" while "[w]aiver is the intentional relinquishment or abandonment of a known right," but that a party had "not forfeit[ed] or waive[d] its arguments on the proper construction" where it had "presented its arguments about the proper construction [below] …. [Appellee] had the opportunity to respond to those arguments, and the [PTAB] agreed with [Appellee].").

9

### C. Accepting lexicography regarding "merchants" does not "favor the provisional over the nonprovisional."

Appellees argue that the provisional should not be favored over evidence in the nonprovisional. *See* Resp. Br. at 21. Here, though, the nonprovisional *incorporates* the provisional, such that "definitions in any incorporated patents or references are *a part of the host patent.*" *Finjan*, 51 F.4th at 1382.

Appellees employ an inaccurate framing. The issue is not "provisional vs. nonprovisional" but rather "express definition vs. mere description." As set forth below, the primary "evidence" in the nonprovisional (purportedly demonstrating DDR's decision to disclaim the express services-inclusive definition) is a *description* of "merchants" in the context of a preferred embodiment. *See infra* II. This Court has been clear that descriptions in preferred embodiments do not limit claim terms, much less function to disclaim explicit definitions such as the one supplied in the provisional. *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 992 (Fed. Cir. 1999) ("Mere inferences drawn from the description of an embodiment of the invention *cannot* serve to limit claim terms." (emphasis added)).

Appellees assume what they seek to prove by arguing "DDR cannot demonstrate the required clarity, deliberateness, and precision by looking solely at the *provisional* when the applicant abandoned that definition *in the nonprovisional*." Resp. Br. at 20. But patentee never "abandoned" the provisional's definition when filing the nonprovisional. *Id.* As shown below, *infra* II, a characterization of "merchants" in describing a particular embodiment demonstrates neither disclaimer nor abandonment of an express definition in an incorporated-by-reference provisional. Nor does a purported choice to discuss just one embodiment in the nonprovisional's "detailed description" section mandate a conclusion that DDR chose to claim only goods. Resp. Br. at 9, 20.

Appellees offer no evidence that patentee ever affirmatively "abandoned" the definition or "chose" to claim only goods rather than goods and services, *id.*, and the near-universal use of the term "product" in the regular application confirms that patentee did not "choose" such narrowing. *See* Part III.B below (showing that the uniform evidence of record confirms that the definition of "product" in the relevant field includes services).

11

**D.    Whether the words "services" and "products" are distinct or overlapping has no bearing on lexicography.**

Appellees argue that the inclusion of "products and services" in a claim limitation of a parent application to the '399 Patent "reinforces that 'services' are distinct from goods/products and neither presumptively included in the word 'products' nor purveyed by 'merchants.'" Resp. Br. at 23. The claim limitation referenced by Appellees does not support severing "products" from any construction that includes "services," as shown in Part III.B below, but, regardless, any such distinction would not negate the provisional application's definition of "merchants" as purveyors of *products or services*." After all, DDR has not attempted to serve as its own lexicographer with respect to the word "products"—DDR has claimed lexicography with respect to the word used in the claims-at-issue, "merchants." The provisional, and by incorporation the patent, explicitly includes "services" within the definition of "merchants"; whether it or the parent patent claims consider "services" to be separate from or part of "products" simply is not germane to the issue at hand.

Appellees' argument also fails because the parent claims do not define "products" as "goods" (or use the term "goods/products") and do not "confirm" that the word "product" must strictly exclude services.

Patentee clearly and explicitly defined "merchant" as including "services." The use of the phrase "products and services," which ensures that the definition of "merchant" includes dealing in both, does not amount to "evidence" that the term "products" cannot also include "services."

## II.    Appellees cannot establish superseding lexicography based on a description of a preferred embodiment.

A cornerstone of Appellees' argument against use of the lexicographic definition is the assertion that the "detailed description" section of the nonprovisional application that became the '399 Patent contains an inconsistent *definition* of "merchants," which represents either a superseding lexicography or a disclaimer of the provisional's definition. *See* Resp. Br. at 19–22. Appellees' argument entirely depends on treating a single sentence in a description of a preferred embodiment in the nonprovisional—"[m]erchants are the producers, distributors, or resellers of the goods to be sold"—as if it were an explicit lexicographic definition of "merchants." *See* Resp. Br. at 15 (quoting 22:17–19). Without

13

that improper treatment, Appellees have no excuse for discounting the explicit definition set forth in the provisional and incorporated by reference into the nonprovisional. *See supra* I. But Appellees' argument assumes what it seeks to prove and is foreclosed by this Court's precedents. Appellees are also collaterally estopped from contending that the quoted sentence is a definition.

### A.    Appellees present a circular argument and improperly rely on a description of a preferred embodiment.

Appellees first argue that the description of "merchants" as purveyors of only "goods" represents patentee's decision to "delete[] the prior reference to services from the nonprovisional's definition of merchants." Resp. Br. at 15. But Appellees' argument begs the question of whether the cited sentence has the same status and effect as the explicit lexicographic definition contained in the provisional.

Unmentioned in Appellees' argument is the fact that the sentence describing merchants as purveyors of "goods" appears in a section of the written description beginning with "[a] *preferred embodiment* of the invention is now described in detail ...." Appx0539 (4:38–39) (emphasis added). The ensuing section contains more than two dozen statements

14

clarifying that this portion of the description addresses only a "preferred embodiment." *See* Appx0539–0550. And the section concludes with:

> "*The embodiments described above are given as illustrative examples only*. It will be readily appreciated that many deviations may be made from the specific embodiment disclosed in this specification without departing from the invention. Accordingly, *the scope of the invention is to be determined by the claims below rather than being limited to the specifically described embodiment above*."

Appx0550 (26:34–40) (emphasis added).

Federal Circuit case law forecloses limiting the construction of a claim term based on a description in a preferred embodiment. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc) (describing the practice of limiting a construction using an embodiment as a "cardinal sin" of claim construction). This Court has likewise "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Id.* at 1323; *see also, e.g., GE Lighting Sols., LLC*, 750 F.3d at 1309 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic

record that the patentee intended the claims to be so limited." (internal

citations and quotation marks omitted)).

This Court has repeatedly paid close attention to the distinction

between a description of an embodiment and an express lexicographic

definition precisely because the former cannot override the latter. *See,*

*e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1352 (Fed.

Cir. 2010) ("when the specification uses a single embodiment to enable

the claims, courts should not limit the broader claim language to that

embodiment unless the patentee has demonstrated a clear intention to

limit the claim scope using words or expressions of manifest execution or

restriction." (cleaned up)); *Thorner*, 669 F.3d at 1366 ("It is likewise not

enough that the only embodiments, or all of the embodiments, contain a

particular limitation. We do not read limitations from the specification

into claims; we do not redefine words. Only the patentee can do that.");

*Johnson*, 175 F.3d at 992 ("Mere inferences drawn from the description

of an embodiment of the invention *cannot* serve to limit claim terms."

(emphasis added)).

**B.    Appellees fail to show clear and explicit evidence that patentee intended to define merchants as dealing in "goods" to the exclusion of "services."**

The description of "merchants" in the nonprovisional does not represent a clear and explicit lexicographic choice by patentee—and, by the same token, it does not amount to a disclaimer of the provisional's definition. This is shown by the fact that the description lacks any "words or expressions of manifest exclusion or restriction" as required to show that the embodiment was intended to limit the scope of the claims. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967 (Fed. Cir. 2022).

The description in the preferred embodiment—unlike the definition in the provisional—does not contain the phrase "defined as," nor does it "set off ['merchants'] by quotation marks [to] indicat[e] that what follows is a definition," *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007). The description in the nonprovisional does not include statements such as "'the present invention is …' or 'all embodiments of the present invention are …'" *GE Lighting Sols., LLC*, 750 F.3d at 1309 (internal citations omitted). Nor does it include language stating that merchants are "require[d]" to deal in only goods or state that restricting merchants to dealing only in goods is "an

17

important" or "very important" or "essential" aspect of the invention. *Id.* at 1309–10 (internal citations and quotation marks omitted). In short, the non-provisional sentence contains *none* of the hallmarks of a *definition. See also Kumar v. Ovonic Battery Co.*, 351 F.3d 1364, 1368–69 (Fed. Cir. 2003) ("Although it is firmly settled that an applicant may act as a lexicographer in the specification, the specification cannot support a definition that is contrary to the ordinary meaning of a claim term unless it communicates a deliberate and clear preference for this alternative definition." (cleaned up)); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 n.13 (Fed. Cir. 1998) ("The patentee's lexicography must, of course, appear with reasonable clarity, deliberateness, and precision before it can affect the claim." (citations omitted)).

The wording, describing merchants as purveyors of "*the* goods to be sold," reinforces that this statement pertains to the specific embodiment being described. Appx0548. The only possible antecedent of the definite article here is "the goods" that the embodiment was describing as being sold in that example. *See id.* Had patentee intended this statement to serve as a definition, the sentence would, among other things, not have used the definite article and instead referred to "goods" in general.

Instead, the surrounding language confirms that the description is only offered to illustrate a preferred embodiment. *See* Appx0539 (4:38–39); Appx0550 (26:34–40); *see also GE Lighting Sols., LLC,* 750 F.3d at 1309–10 (holding that district court erred in importing limitations from a "depicted embodiment" into claim terms). As this Court has stated, "[b]ecause these statements do not describe *all* embodiments, they do not describe the invention as a whole." *Ethanol Boosting Sys., LLC v. Ford Motor Co.*, No. 2021-1949, 2022 WL 2798395, at *2 (Fed. Cir. July 18, 2022) (emphasis added). Treating this description as either explicit lexicography or explicit disclaimer of the provisional definition would be error.

Appellees also mistakenly assert that their interpretation is "reinforced by every discussion of merchants in the specification." Resp. Br. at 25. This is false as a matter of fact because the provisional application, which is part of the as-issued specification, expressly discusses "services"; indeed, it *defines* "merchants" as also dealing in services. *See Finjan*, 51 F.4th at 1382; Op. Br. at 17; Appx0876 (provisional application). And, although Appellees place great weight on the discussion of "shipping ordered items to customers," Resp. Br. at 25,

19

they do not deny that the nonprovisional also explicitly mentions a scenario where shipping is *not* applicable, and that counterexample disproves Appellees' thesis. *See* Op. Br. at 22 (citing Appx0540 (6:56–57)).

### C.    *MPHJ* does not support appellees' arguments.

Appellees' arguments, both here and before the district court, rely heavily on *MPHJ Technology Investments, LLC v. Ricoh Americas Corporation*, 847 F.3d 1363 (Fed. Cir. 2017). As DDR's blue brief shows, *MPHJ* is *not* a case finding that a description in a preferred embodiment controls over—or represents an express disclaimer of—an explicit definition incorporated from a provisional application. *See* Op. Br. 17–19. Instead, *MPHJ* involved dueling *descriptions*, one from a provisional describing a required one-step process and one from a nonprovisional expressly calling the single-step process optional. *See* 847 F.3d at 1368–69. It thus made sense for the *MPHJ* Court to read significance into the inconsistent *descriptions*. Nothing in *MPHJ* suggests—much less holds— that an express *definition* in a provisional application can be abrogated by implication from a description in a preferred embodiment. *See id.*[5] The

<hr>

[5] Additionally, because the description of "merchants" as dealing in goods is entirely *consistent* with the provisional's definition of merchants as dealers in "products or services," the inconsistency that motivated the

other cases cited by Appellees confirm the commonplace proposition that changes between a provisional and nonprovisional *can* have significance for claim construction, but none of which hold that non-definitional descriptions of preferred embodiments can operate to disclaim a patentee's clear lexicographic choice. *See* Resp. Br. at 16.[6]

Appellees assert that the distinction between description and definition is irrelevant because the ultimate inquiry of claim construction concerns the "proper scope of the claim in view of the 'complete filed specification.'" Resp. Br. at 18 (quoting Op. Br. at 18). But the "complete filed specification" includes material incorporated by reference, here the provisional's discussion of "services" and the provisional's express definition of "merchants." *See Finjan*, 51 F.4th at 1382. And, absent

---

holding in *MPHJ* is lacking here, *see* 847 F.3d at 1368–69. Instead, "*either* embodiment falls within the scope of the claims." *See* Op. Br. at 17–19.

[6] The first case Appellees cite, *DNA Genotek Inc. v. Spectrum Solutions L.L.C.*, No. 3:21-CV-00516, 2022 WL 17331255, at *20 (S.D. Cal. 2022), dealt only with an embodiment—not a definition—included in an incorporated provisional. Appellees' second cited case, *Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*, No. 416CV00812ALMKPJ, 2017 WL 4867620, at *6 (E.D. Tex. Oct. 27, 2017), supports DDR's position, as the court rejected the defendant's proposed construction because it "would improperly import limitations from disclosed embodiments" into the claim language, precisely the error Appellees commit here.

21

disclaimer, patentee's choice to act as its own lexicographer must be respected. *See Biogen MA Inc. v. EMD Serono, Inc.*, 976 F.3d 1326, 1336 (Fed. Cir. 2020).

Here, only one explicit definition appears in the "complete filed specification," and that is "[m]erchants, defined as producers, manufacturers, and select distributors of products or services …." The description relied upon by Appellees contains none of the hallmarks of explicit lexicography and is not a disclaimer. *See GE Lighting Sols., LLC*, 750 F.3d at 1309 (noting that the standards for finding lexicography and disavowal are "exacting" and "similar[]" in requiring clear evidence of intent). The provisional's services-inclusive definition of "merchants" thus controls.

## D.    *Finjan* undermines appellees' arguments.

Appellees also cite *Finjan*, 51 F.4th at 1382, for the proposition that "the incorporation by reference of, for example, one patent into another does not convert the invention of the incorporated patent into the invention of the host patent," and that it is "the disclosure of the host patent [that] provides context to determine what impact, if any, a patent

incorporated by reference will have on construction of the host patent claims." Resp. Br. at 17. *Finjan*, however, supports DDR's position.

In *Finjan*, this Court confirmed (1) that "[c]laims must be read in light of the specification," (2) that the specification "includes any patents incorporated by reference," (3) that "[p]atents that are incorporated by reference are effectively part of the host patents as if they were explicitly contained therein," and (4) that "definitions in any incorporated patents or references are *a part of the host patent*." *Finjan*, 51 F.4th at 1382 (cleaned up).

*Finjan* discussed what impact the incorporation of *multiple* patents with express—*and inconsistent*—definitions of a claim term should have on construction. *Id.* at 1382–84. The Court held that, in picking between competing definitions incorporated by reference, the district court should have looked to the text of the patents in question, all of which either set forth their own definitions or examples guiding the choice among the competing definitions. *Id. Finjan* has no application where, as here, there are no competing incorporated definitions. Here, there is *one* definition, the one incorporated by reference from the provisional, and a non-definitional description of a preferred embodiment.

23

### E.    The PTAB and the District Court correctly rejected appellees' "superseding lexicography" argument.

The PTAB ruled that the sentence in the nonprovisional is not definitional, and the district court did not disagree. Appx0748–0749 (PTAB); Appx1416–1422 (district court). Appellees nonetheless describe the sentence in the nonprovisional as a definition. *E.g.,* Resp. Br. at 15 ("Redefining"). Appellees already litigated—and lost—that precise issue before the PTAB and thus are collaterally estopped from even suggesting that the nonprovisional contains a definition. *See Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1351 (Fed. Cir. 2018) (affirming "binding lexicography" in an IPR, stating, "[w]e apply our precedent on collateral estoppel when claim construction is involved … collateral estoppel, also known as issue preclusion, applies in the administrative context.").

Appellees miss the point by arguing that the PTAB's holding does not control because it applied the "broadest reasonable interpretation"—rather than the *Phillips*—standard. Resp. Br. at 22. Appellees are not estopped from arguing for any construction, but they are estopped from supporting their argument with the assertion that the descriptive sentence in the nonprovisional qualifies as a definition. Regardless of the

ultimate standard for claim construction, the legal standards governing *lexicography* are the same before the PTAB as they are in federal court. *See, e.g., Dr. Falk Pharma GmbH v. GeneriCo, LLC*, 774 F. App'x 665, 673 (Fed. Cir. 2019) ("Under both [the broadest reasonable interpretation] standard and the *Phillips* standard, we construe terms according to their plain and ordinary meanings as understood by a skilled artisan *unless the patentee acts as his or her own lexicographer and clearly sets forth a definition of the disputed claim term in either the specification or the prosecution history*." (emphasis added)). The PTAB considered Appellees' arguments regarding the lexicographic effect of the discussion of merchants in the nonprovisional and sided with DDR in ruling that the description does not meet the standard for qualifying as a definition. Appellees chose not to appeal that final ruling. They cannot contend otherwise now.

## III. Appellees' arguments regarding the "plain and ordinary meaning" of "merchants" are irrelevant.

Appellees spend large portions of their response brief arguing that extrinsic evidence restricts the "plain and ordinary meaning" of "merchants" to purveyors of goods. *See* Resp. Br. at 23–31. But such arguments cannot override the clear and explicit definition set forth in

the provisional and incorporated into the nonprovisional. Appx0086 (1:14–15); Appx0876 (provisional). As such, whether the extrinsic evidence confirms DDR's express definition is irrelevant. *See Phillips*, 415 F.3d at 1316 (noting that where "a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess … the inventor's lexicography governs.").

### A.     Usage by skilled artisans demonstrates that "merchants" deal in goods and services.

Appellees do not address the evidence presented to the district court demonstrating that artisans in the relevant field used the term "merchant" (or its equivalent "merchandiser") to refer to purveyors of goods or services. *See* Op. Br. at 24–25 (citing Appx0914, Appx0927, Appx0932, and Appx0942). Appellees' citations of "general-usage dictionar[ies] cannot overcome [this] art-specific evidence of the meaning of a claim term." *Phillips*, 415 F.3d at 1322 (internal quotation marks and citation omitted). Appellees offer no answer in their "plain and ordinary meaning" argument.

### B.     The District Court's equation of "goods" and "products" was erroneous.

Appellees rely on the district court's finding that the words "'goods' and 'products' in the specification were used interchangeably, and [that]

the specification distinguished them from 'services.'" Resp. Br. at 26 (quoting Appx1358 (20:8–14)). Appellees further claim that DDR provided "no specific argument that this factual finding is clearly erroneous" and has thus waived its right to challenge this finding. Resp. Br. at 27 & n.3.

As noted in DDR's opening brief, however, the district court's reading of the patent is a legal determination and not a "finding of fact," and thus this Court reviews that finding *de novo*. Op. Br. at 21. Far from being waived, DDR's opening brief makes clear that, whatever standard is applied, the district court's determination was erroneous for three reasons. Op. Br. at 21 ("Either way, that determination is in error.").

*First*, the *uniform* evidence presented to the District Court from both dictionary definitions of "product" and usage in the relevant field at the time—including by Priceline itself[7]—confirms that the word

---

[7] Appellees attempt to rebut Priceline's own usage by arguing that marketing materials are of little probative value and that claims are not construed in light of the accused device. Resp. Br. at 20 n.4. However, noting that Priceline used "products" to refer to "services" at the turn of the millennium is not "construing claims in light of the accused device," but rather demonstrating that artisans in the relevant field at the time used the term consistent with DDR's proposed construction. And DDR is not suing Priceline for its activities in 2000 (before the patent issued).

"product" clearly encompassed "services."[8] *See* Op. Br. at 23 & n.4. Appellees do not identify even a scrap of evidence to the contrary. Thus, even under the (non-applicable) "clearly erroneous" standard, the District Court's "finding" is wrong, as DDR argued in its opening brief. Op. Br. at 24–26.

*Second*, the specification of the regular application itself never *equates* "products" with goods, and indeed expressly refers to "products" as including those that may or may not require shipping, which would be required if "products" meant only "goods." *See supra* II.B.

And *third*, the only instance in either application in which the word "products" is "juxtaposed" with the word "goods" occurs *in the very*

---

Moreover, even if marketing materials *may* mean something different, Appellees provide no argument that Priceline's usage actually did mean something different. As the materials cited in DDR's opening brief show, artisans frequently and consistently used the word "product" to refer to both goods and services during the relevant time. *See* Op. Br. at 25.

[8] Appellees argue that DDR has waived its challenge to the district court's conclusion that DDR did not support its definition with evidence "to the artisan of ordinary skill's perspective." This is incorrect because the discussion in DDR's opening brief provided a series of citations to record evidence before the district court (uniform evidence) that showed usage by artisans. *See* Op. Br. at 25.

*definition of merchants in the nonprovisional that the district court refused to apply. See* Op. Br. at 22.

In sum, the district court's finding—whether of fact or of law—was inconsistent with usage of "product" in the field, in dictionaries, in the nonprovisional, and even with its own holding rejecting the definition. This Court owes it no deference.

## IV. This Court's resolution of the construction of "merchants" also resolves the construction of "commerce object."

Appellees and DDR agree that, under the '399 Patent, merchants sell "commerce objects." *See* Resp. Br. at 32 ("the specification describes that 'commerce objects' are what 'merchants' sell …."); *cf. id.* at 33 ("Appellees' previous evidence and arguments concerning the construction of 'merchants' and the extrinsic evidence apply equally to 'commerce object.'"). As such, if this Court construes merchants as including sellers of "services," that decision effectively construes "commerce object" as including "services."

Similarly, Appellees' arguments for their proposed definition of "commerce object" in the specification turn entirely on the district court's erroneous determination that "products" means "goods." *See id.* (characterizing a section of the specification describing a "commerce

object" as a "*product*, a *product* category, a catalog or an indication that *product*, *product* category or catalog should be chosen dynamically" as a "definition" of "commerce object"). Thus, overturning the district court's erroneous decision defining "products" as only "goods," under either the "clearly erroneous" or *de novo* standard, requires concluding that the definition of "commerce object" includes services.

## V.    Conclusion

This Court should reverse the district court's constructions of "merchants" and "commerce object" as being limited to goods, adopt DDR's constructions of those terms as including services, vacate the judgment of non-infringement below, and remand for further proceedings.

Dated: July 14, 2023          Respectfully submitted,


                             */s/  Ian B. Crosby*

                             Ian B. Crosby (Principal Attorney)
                             SUSMAN GODFREY L.L.P.
                             401 Union Street, Suite 3000
                             Seattle, Washington 98101
                             Telephone:        (206)        516-3880
                             icrosby@susmangodfrey.com

                             Louis J. Hoffman
                             LOUIS J. HOFFMAN, P.C.
                             7689 East Paradise Lane, Suite 2
                             Scottsdale, AZ 85260
                             Telephone: (480) 948-3295
                             louis@valuablepatents.com

                             Shawn D. Blackburn
                             Meng Xi
                             SUSMAN GODFREY L.L.P.
                             1000 Louisiana Street, Suite 5100
                             Houston, Texas 77002
                             Telephone: (713) 653-7822
                             Telephone: (713) 653-7851
                             sblackburn@susmangodfrey.com
                             mxi@susmangodfrey.com
                             *Attorneys for Plaintiff-Appellant DDR
                             Holdings, LLC*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B), because it contains 5,825 words, excluding the exempted parts, according to the word count of the word-processing system used to prepare the brief.


/s/ *Ian B. Crosby*
Ian B. Crosby