In the United States Court of Appeals
for the Federal Circuit

DDR HOLDINGS, LLC,

*Plaintiff-Appellant*,

v.

PRICELINE.COM LLC, BOOKING.COM B.V.,

*Defendants-Appellees.*

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
CASE NOS. 17-498; 17-499, CHIEF JUDGE COLM F. CONNOLLY

## CORRECTED JOINT PRINCIPAL BRIEF OF DEFENDANTS-APPELLEES

Jeremy Taylor
**Baker Botts LLP**
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200

*Counsel for Defendants-Appellees,
Priceline.com LLC and Booking.com
B.V.*

Lauren J. Dreyer
**Baker Botts LLP**
700 K Street, N.W.
Washington, DC 20001-5692
Telephone: (202) 639-7700

Margaret M. Welsh
**Baker Botts LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500

Francis DiGiovanni
**Faegre Drinker Biddle
& Reath LLP**
222 Delaware Avenue, Suite 1410

Wilmington, DE 19801
Telephone: (302) 467-4200

*Counsel for Defendants-Appellees,*
*Priceline.com LLC and Booking.com*
*B.V.*

DATED: August 11, 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2023-1176, 2023-1177 |
| **Short Case Caption** | DDR Holdings, LLC v. Priceline.com LLC, Booking.com B.V. |
| **Filing Party/Entity** | Priceline.com LLC, Booking.com B.V. |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box**. Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/06/2022

Signature: /s/ Jeremy Taylor

Name: Jeremy Taylor

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☐ None/Not Applicable |
| Priceline.com LLC | | Booking Holdings Inc. |
| Booking.com B.V. | | Booking Holdings Inc. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐　Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable    ☑ Additional pages attached

| | | |
|---|---|---|
| Bradley Shigezawa<br>Baker Botts LLP | Margaret Welsh<br>Baker Botts LLP | Brett C. Govett<br>Norton Rose Fulbright |
| Joshua Friedman<br>Baker Botts LLP | Mark Oda<br>Baker Botts LLP | Catherine J. Garza<br>Norton Rose Fulbright |
| M. Curt Lambert<br>Faegre Drinker Biddle & Reath LLP | Thatcher A. Rahmeier<br>Faegre Drinker Biddle & Reath LLP | Dan D. Davison<br>Norton Rose Fulbright |

**5. Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). See also Fed. Cir. R. 47.5(b).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable    ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Form 9. Certificate of Interest

Legal Representatives cont'd:

1. Daniel S. Leventhal (Norton Rose Fulbright);

2. Gabriel Culver (Norton Rose Fulbright);

3. James V. Leito, IV (Norton Rose Fulbright);

4. Jeremy Douglas Anderson (Fish & Richardson, P.C.);

5. Marwan Elrakabawy (Norton Rose Fulbright).

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES .................................................................1

INTRODUCTION ...........................................................................................1

STATEMENT OF THE ISSUES......................................................................2

STATEMENT OF THE CASE..........................................................................2

    I.      Background .........................................................................3

    II.     The '399 Patent ...............................................................3

    III.    Relevant File History .........................................................7

    IV.    The *Markman* Order and Stipulation of Noninfringement ...................9

SUMMARY OF ARGUMENT .........................................................................14

STANDARD OF REVIEW ............................................................................15

ARGUMENT ...............................................................................................16

    I.      The Applicant Acted as Its Own Lexicographer in Redefining the Term "Merchants" in the Nonprovisional and That Redefinition Controls .16

    II.     The District Court Properly Found That DDR Did Not Establish Lexicography for Its Proposed Construction ......................................20

    III.    The District Court's Construction Is Also Consistent with the Plain and Ordinary Meaning of the Term in Light of Both the Intrinsic and Extrinsic Evidence..............................................................................24

        A.    The Intrinsic Evidence Confirms That "Merchants" Are Purveyors of Goods or Products, Not Services ........................25

        B.    The Extrinsic Evidence Supports the District Court's Construction of "Merchants" ....................................................30

    IV.    The District Court's Construction of the Term "Commerce Object" Should Also and Separately Be Affirmed..........................................32

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ..............................35

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*AlterWAN, Inc. v. Amazon.com, Inc.*,
    63 F.4th 18 (Fed. Cir. 2023) ...........................................................31, 32

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
    922 F.2d 792 (Fed. Cir. 1990) ...............................................................28

*Bridges v. Wilson*,
    996 F.3d 1094 (10th Cir. 2021) .............................................................29

*DNA Genotek Inc. v. Spectrum Solutions L.L.C.*,
    No. 3:21-CV-00516, 2022 WL 17331255 (S.D. Cal. 2022) ...............17

*Finjan LLC v. ESET, LLC*,
    51 F.4th 1377 (Fed. Cir. 2022) ........................................................18, 23

*In re Paulsen*,
    30 F.3d 1475 (Fed. Cir. 1994) ...............................................................20

*Jack Guttman, Inc. v. Kopykake Enter., Inc.*,
    302 F.3d 1352 (Fed. Cir. 2002) .......................................................21, 23

*MPHJ Technology Investments, LLC v. Ricoh Americas Corporation*,
    847 F.3d 1363 (Fed. Cir. 2017) ..................... 10, 16, 17, 18, 19, 20, 23

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................10, 23, 25

*Shire Dev't, LLC v. Watson Pharms., Inc.*,
    848 F.3d 981 (Fed. Cir. 2017) ...............................................................21

*Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*,
    No. 4:16-cv-00812ALM-KPK, 2017 WL 4867620 (E.D. Tex. 2017)...............17

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) (en banc) .......................................31

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015).........................................................................15, 28

*Thorner v. Sony Comput. Entm't Am. LLC*,
   669 F.3d 1362 (Fed. Cir. 2012) .......................................................16, 20, 22, 24

*United Cannabis Corp. v. Pure Hemp Collective Inc.*,
   No. 2022-1363, 2023 WL 3295467 (Fed. Cir. 2023) ..........................................29

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*,
   782 F.3d 671 (Fed. Cir. 2015) ............................................................................31

**STATUTES**

28 U.S.C. § 2111 .......................................................................................................29

## STATEMENT OF RELATED CASES

Defendants-Appellees Priceline.com, LLC and Booking.com, B.V. file this Corrected Joint Principal Brief in response to DDR Holdings LLC ("DDR") appeal on the ruling of the United States District Court for the District of Delaware entering Final Judgment against DDR of no infringement in the consolidated cases DDR Holdings, LLC v. Priceline.com, LLC, 17-cv-498 (D. Del.) (lead case) and DDR Holdings, LLC v. Booking.com, B.V., 17-cv-499 (D. Del.) (consolidated case). Appx0001–0002. Defendants-Appellees are not aware of any other appeal in or from these civil actions or any case pending in this or any other tribunal that will directly affect or be directly affected by this court's decision in the pending case.

## INTRODUCTION

When considering the full intrinsic record, the district court's construction of the terms "merchants" and "commerce object" was correct. As the district court rightly found, in the context of the asserted patent and its prosecution history, "merchants" are not purveyors of services and the "commerce object" associated with those merchants therefore do not include services. To challenge these constructions on the intrinsic record, DDR relies exclusively on lexicography, pointing solely to a few words from a provisional application, while asking the Court to ignore the applicant's deletion of those same words in the nonprovisional application that ultimately issued as the '399 Patent. The intentional deletion from

the nonprovisional application of those words reflects the applicant's clear intent to redefine the term. To that, DDR has no response. DDR instead invites the Court to ignore its own precedent on the significance of differences that exist between provisional and nonprovisional applications. The district court's construction—which stayed true to the applicant's definition and all of the descriptions and embodiments in the nonprovisional application—accords as well with the extrinsic evidence, and DDR identifies no clear error in the district court's weighing of that evidence. This Court should therefore affirm.

## STATEMENT OF THE ISSUES

1.      Whether the district court's construction of the term "merchants" was correct—as "producers, distributors, or resellers of the *goods* to be sold" and not as "producers, distributors, or resellers of the *goods or services* to be sold"—based on its proper analysis of the intrinsic and extrinsic record.

2.      Whether the district court's construction of the term "commerce object" was correct as "a product, a product category, a catalog, or an indication that a product, product category, or catalog should be chosen dynamically" and not as "a product *(goods or services)*, a product category, a catalog, or an indication that a product *(goods or services)*, product category, or catalog should be chosen dynamically."

## STATEMENT OF THE CASE

## I. Background

DDR filed a lawsuit in 2017 in the District of Delaware against Priceline.com, LLC ("Priceline") and Booking.com, B.V. ("Booking") (collectively, "Appellees") for alleged infringement of U.S. Patent Nos. 7,818,399 ("the '399 Patent"); 8,515,825 ("the '825 Patent"); 9,043,228 ("the '228 Patent"); and 9,639,876 ("the '876 Patent") (collectively, the "Asserted Patents"). Appx0044-0055. Appellees petitioned the Patent Trial and Appeal Board ("PTAB") for *inter partes* reviews of the Asserted Patents.

By stipulation and accompanying order, the parties agreed to stay proceedings pending resolution of the patentability issues raised in the IPRs. Appx0028. The PTAB's final written decisions invalidated all challenged claims of the '825, '288, and '876 Patents but rejected the unpatentability arguments raised for the '399 Patent. Appx0686-0737. In the decision on the '399 Patent, the PTAB, applying the broadest reasonable construction standard, construed "merchants" as "producers, distributors, or resellers of the goods or services to be sold." Appx0748-0749.

Following the final written decisions, the district court lifted the stay. Accordingly, the '399 Patent remained the only asserted patent, and in accordance with DDR's final election of asserted claims, only claims 1, 3, 7, 14, and 16 of the '399 Patent remained.

## II. The '399 Patent

The '399 Patent is directed towards solving a problem that existed in 1998, the relevant time period of the claimed invention. At that time, websites often contained links to other websites to increase visitor traffic; these links, however, encouraged "people to leave their website" when clicked. Appx0538 (1:35-52). One drawback of this prior art website linking was that when a visitor clicked on a product to purchase, the visitor would enter the merchant's online store and leave the original host website. Appx0538 (2:34-49).

The purported solution claimed in the '399 Patent is to capture and store the look and feel of the host website, and then generate a third-party website that has the host website's look and feel. Appx0539 (3:17-24). Such websites would give the impression of viewing websites served by the host but were actually third-party intermediary websites.

The '399 Patent identifies at least three actors for this system: (1) the host; (2) the outsource provider; and (3) the merchant. The first actor, the host, is an operator of a website with links to commerce objects. Appx0548 (22:46-58). The '399 Patent describes a commerce object as "a product, a product category, a catalog or an indication that a product, product category or catalog should be chosen dynamically." Appx0545 (15:17-20). The second actor, the outsource provider, is an intermediary between the host and merchant and provides a platform for e-commerce support. Appx0548-0549 (22:60-23:23). The third actor, the merchant, is

the provider of the commerce object to be bought. Appx0548 (22:17-42); Appx0550 (claim 1). The subsection of the '399 Patent titled "Merchants" states that "[m]erchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider." Appx0548 (22:15-18).

In all instances, the '399 Patent describes merchants as selling, producing, and distributing physical goods. For example, the "Background of Invention" section describes prior art "affiliate programs," which allow merchants (*e.g.*, Amazon) to promote their "goods (*e.g.*, 10 of Amazon.com's millions of books, selected by the website owner)." Appx0538 (2:12-23). The '399 Patent also describes, as a benefit of the affiliate programs, not having to invest in "product inventory." Appx0538 (2:24-27). The figures of the '399 Patent also illustrate "products" or "goods" as physical items. Appx0526 (showing "Celebrate the Seasons!" cookbook (i.e., a good) offered by "The Dunwoody Gourmet Group"); Appx0530 (showing "chocolate," "spreads and associated products," "seafood and associated products," "gift baskets," "condiments," "other products," and "FFGC Super Sampler Gift Set" (i.e., goods) as the "products offered by Fancy Foods Gourmet Club")).

The '399 Patent further elaborates that the merchants' "primary responsibilities . . . are to: [m]aintain an up-to-date catalog within the system including all products that are available for sale in storefronts served by the outsource provider." Appx0548 (22:18-22). Merchants are able to focus on product

development, production, and order fulfillment, as well as assemble shipping orders. Appx0539 (3:4-5), Appx0549 (23:61-63).

The claims of the '399 Patent do not recite any of the terms "products," "goods," or "services." Rather, the claims track the language of the specification, claiming certain interactions between merchants, outsource providers, and webpages/hosts. For example, in a scenario described in the '399 Patent, a customer on the host's website becomes interested in a product, selects the product by clicking an image of the product, and is taken to a webpage having the look and feel of the host webpage but provided by an outsource provider. Appx0550 (25:1-14).

Although the claims do not recite "products," "goods," or "services," they do describe "commerce objects" in the context of merchants. Claim 1, for example, recites that the "first web page[] displays at least one active link associated with a *commerce object* associated with a buying opportunity of a selected one of a plurality of *merchants*." Appx0550 (26:53-56).[1]

The specification of '399 Patent itself makes no reference to buying or selling services, nor is there any disclosure or suggestion that merchants offer anything other than goods, otherwise known as products. Appx0548 ("Merchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider."); Appx0548 ("The primary responsibilities of a Merchant are to: Maintain

---

[1] Emphases added throughout unless otherwise noted.

an up-to-date catalog within the system including all products that are available for sale in storefronts served by the outsource provider."); Appx0509 (Abstract); Appx0518 (Fig. 7); Appx0539 (3:1-16); Appx0540-0542 (6:62-9:45); Appx0543 (12:19-23); Appx0544-0546 (13:3-17:59); Appx0547 (20:13-44); Appx0548 (21:18-22:67); Appx0549-0550 (23:24-24:56, 24:58-26:40). When the specification refers to "services," it does so only in the context of computer or e-commerce support "services" running on computer servers or "customer service" functions. *See, e.g.*, Appx0548 (21:18-25, 22:33-34).[2]

## III.    Relevant File History

The '399 Patent claims priority to a provisional patent application, Serial No. 60/100,697, filed on September 17, 1998 (the "provisional"). Appx0864. In the provisional, as in the nonprovisional that issued as the '399 Patent, the applicant used the words "goods" and "products" interchangeably, and in parallel instances, to describe physical goods bought and sold:

- Additionally, through partnerships with self-service solutions providers (described above), we will be able to cross-sell additional ***products and services*** to customers to create enhanced value for Merchants and customers while creating incremental revenue sources for Nexchange Corporation. Appx0875.

- Selling through Nexchange enables Merchants to increase the gross margin on their ***goods and services***, especially compared to the margins

---

[2] The '399 Patent references services seventeen times, twice as a verb, and fifteen other times in the context of computer services running on a server or customer service or services. Appx0538-0552.

they receive selling through traditional distribution channels such as wholesalers and distributors. Appx0876.

- Nexchange Merchants capitalize on the marketing/traffic-building expertise of the Hosts while focusing on the quality of their own **_products and services_** and the profitability of the new online sales source. Appx0877.

The provisional also consistently describes "services" as distinct and apart from both "products" and "goods." Appx0875; Appx0876; Appx0877. For example, the provisional describes the ability to "cross-sell additional *products and services* to customers" and that using an outsource provider can "increase the gross margin on their *goods and services*." Appx0876; *see also* Appx0875; Appx0877. Although the provisional treats goods and products interchangeably, in every instance it distinguishes "services" from those goods and products. In fact, DDR conceded during the *Markman* hearing that the use of the disjunctive in the provisional ("products *or* services") further suggests that "services is not encompassed within the ordinary meaning of products" because, otherwise, one of the terms would be rendered redundant. Appx1345-1347 (7:25-9:24).

Nonetheless, it is this disclosure of "products or services" from the provisional application that DDR exclusively relies on to support its construction. Appx0876. For example, the provisional states that "merchants [are] defined as producers, manufacturers, and select distributors of *products or services*." *Id.* Following the provisional, the applicant filed a nonprovisional application that ultimately issued as

the '399 Patent. However, instead of adopting the same language for the term "merchant" set forth in the provisional, the nonprovisonal application redefined "merchant" as "producers, distributors, or resellers of the *goods* to be sold through the outsource provider" in the section titled "Merchants." Appx0548 (22:15-18). This redefinition of the term "merchants"—removing services from the definition— accords with written description of the nonprovisional, which consistently describes goods as interchangeable with products, both being tangible items, consistent with the plain and ordinary meaning of "merchant." Appx0538 (2:12-23, 2:24-27); Appx0526 (Fig. 15). The nonprovisional never discusses a merchant producing, distributing, or reselling "services."

## IV.    The *Markman* Order and Stipulation of Noninfringement

During the claim construction hearing, and in a subsequent written order, the district court construed the term "merchants" as "producers, distributors, or resellers of goods to be sold" and denied DDR's proposed construction of the term as "producers, distributors, or reseller of the goods *or services* to be sold." Appx1416-1422 (78:11-84:12); Appx0009. It found "as a matter of fact that the written description [of the '399 Patent] treats 'goods' and 'product' interchangeably, and it distinguished them [from] 'services.'" Appx1358 (20:8-14). Further, the district court indicated that it was "very, very clear from the provisional application at

multiple pages 8, 9, 10, and 11" that goods and products are interchangeable and also distinct from services. *Id.*

Applying *Phillips*, the district court properly considered the claim language, in view of the specification and the file history, and determined that the applicant intentionally chose to describe "merchants" in such a way that clearly excluded services:

> We start with the claim language. There's no reference to services. And then we turn, then, to the written description, and there are, again, no references to a merchant providing a service. Instead, merchants are always discussed with respect to products or goods.

Appx1418-1419 (80:24-81:3).

> While the written description references products and goods numerous times, it never suggests that products or goods encompass services. Instead, its discussion of products suggests that products are physical items.

Appx1419 (81:23-82:2).

> And as I've outlined and identified before, and as defendants' briefing and its slides today make very clear, that "product" and "goods" were being used interchangeably throughout the provisional application, and I think also in the written description.

Appx1421 (83:4-11).

The district court also correctly relied on *MPHJ Technology Investments, LLC v. Ricoh Americas Corporation*, 847 F.3d 1363 (Fed. Cir. 2017), in concluding that

the intentional deletion of the word "services" from the provisional application supports the court's construction:

> And so we have, therefore, a deletion from the written description of a term that was in the provisional application. And I think the *MPHJ Tech* case favors the defendant in this respect and says that that deletion contributes to an understanding of what the scope and meaning of the final application, the final written description reflects.

Appx1421 (83:9-15).

On the extrinsic evidence, the district court evaluated the various dictionary definitions provided by both parties, ultimately crediting Appellees' dictionary definitions of "merchants"—the disputed claim term—over DDR's definitions of "products," a term that does not appear in the patent's claims. Appx1421-1422 (83:16-84:11). Appellees' definitions of "merchants" were consistent with the intrinsic evidence, making clear to the district court that "merchants sell goods. That's what merchants do." Appx1422 (84:3-6).

In addition to construing the term "merchant," the district court also construed the term "commerce object." Claim 1 describes a relationship between commerce objects and merchants. Similar to "merchants," the main dispute between the parties in construing commerce object was "whether 'services' are included." Appx1424 (86:2-5). The district court construed "commerce object" as "a product, a product category, a catalog, or an indication that a product, product category, or catalog

should be chosen dynamically" and rejected DDR's proposed construction of "a product *(goods or services)*, a product category, a catalog, or an indication that a product *(goods or services)*, product category, or catalog should be chosen dynamically." Appx1424 (86:6-17); Appx1473 (135:1-9); Appx0009; Appx0609.

For this term, the district court followed its reasoning for construing the term "merchant" and explained that DDR's construction improperly attempted to "import the words 'or services'" into the claims. Appx1416-1422 (78:11-84:12); Appx1424 (86:6-10) (Q: "So then, you agree. I mean, I've effectively construed [commerce object]. You don't require any further elucidation or articulation from me about why I would go with the defendants on that; is that fair?"; A: "That is exactly fair, Your Honor.").

After the claim construction hearing, the district court issued a written order, and provided the following constructions:

> 1.      The term merchant means "producers, distributors, or resellers of *goods* to be sold."
>
> 2.      The term "commerce object" means "a *product*, a product category, a catalog, or an indication that a product, *product* category, or catalog should be chosen dynamically."

Appx0009.

In stipulating to noninfringement, the parties' agreed that affirmance of either construction would be case dispositive for Appellees. Appx0005 ("The parties agree that the Accused Instrumentalities do not infringe the asserted claims of the '399

Patent under the Court's claim constructions and that the Court's construction of either the term "merchants" or the term "commerce object" is case-dispositive in [Appellees'] favor on the issue of infringement."). The parties agreed that the district court's construction of either the term "merchants" or the term "commerce object" precludes infringement. Appx0003-0005.

## SUMMARY OF ARGUMENT

The district court correctly construed the terms "merchants" and "commerce object" based on its analysis of the full intrinsic record, holding that "merchants" are not purveyors of services and a "commerce object" does not include services.

DDR's arguments that lexicography applies here to justify departure from the plain and ordinary meaning of these terms is unavailing. Although the provisional application from which the '399 Patent stems states that merchants may provide services, the applicant intentionally departed from this statement in the nonprovisional that issued as the '399 Patent, specifically deleting services from the definition and descriptions of "merchant" in the '399 Patent. That deletion is significant under this Court's precedent. Adopting DDR's construction would divorce the language in the provisional from the entirety of the intrinsic record, including the written description of the '399 Patent, which clearly ascribes a different meaning to "merchants" than the provisional.

When considering the full record, including the intrinsic and extrinsic evidence, the district court properly determined that neither disputed claim term included "services," but, instead, both are directed towards the products or goods that were repeatedly described as being associated with merchants throughout the written description of the '399 Patent.

As a result, the district court properly determined that the words "products" and "goods" are used interchangeably in the '399 Patent and are also distinguished from "services." Applying its reasoning, the district court construed the term "merchants" as not purveyors of services and "commerce object," the product a merchant purveys, as a good and not a service. To the extent the district court made factual findings on these distinctions in the written description, they are not clearly erroneous. This Court should therefore affirm.

## STANDARD OF REVIEW

Claim construction determinations based on the intrinsic record are reviewed by this Court *de novo. See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 333 (2015). Claim construction may involve subsidiary issues of fact, which this Court reviews for clear error. *Id*. at 324. It is generally understood that when "the district court reviews only evidence intrinsic to the patent (the patent claims and specifications, along with the patent's prosecution history), the judge's determination will amount solely to a determination of law;" however, in some cases, "the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period." *Id.* at 331. These findings of fact are reviewed for clear error. *See id.* at 332.

## ARGUMENT

**I.    The Applicant Acted as Its Own Lexicographer in Redefining the Term "Merchants" in the Nonprovisional and That Redefinition Controls**

When viewed in the context of the full intrinsic record, Appellees' proposed construction emerges as the clear and intentional definition of the term "merchants." For lexicography to apply, "a patentee must clearly set forth a definition of the disputed claim term" and must "clearly express an intent to redefine the term." *See Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (internal quotations omitted). The '399 Patent unequivocally states that "Merchants are the producers, distributors, or resellers of the goods to be sold." Appx0548 (22:17-19).

The applicant clearly and explicitly indicated its intent to define "merchants" as purveyors of goods, not services, when it deleted the prior reference to services from the nonprovisional's definition of merchants, a clear and specific departure from the definition in the provisional application. An applicant's intentional choice in a nonprovisional application to delete language from the provisional application informs the proper construction. *See MPHJ*, 847 F.3d at 1369. In *MPHJ*, this Court considered the construction of a phrase described inconsistently between the provisional and nonprovisional applications and found the modified description in the later filed nonprovisional to be controlling. The *MPHJ* provisional application

described a copying process that could be completed in a single step. *Id.* at 1367-68. In contrast, the *MPHJ* nonprovisional omitted the single-step requirement, specifically making it optional. *Id*. The patent owner in *MPHJ* argued that the "omitted sections were not explicitly disclaimed" and could be "properly relied on to explain and limit the claims, even if the passages do not appear in the issued patent." *Id*. This Court disagreed, reasoning that "it is the deletion from the '798 provisional application that contributes understanding of the intended scope of the final application." *Id.* at 1369. The "removal of these limiting clauses," according to the Court, was "significant" to a person of ordinary skill in the art. *Id*.

Following the *MPHJ* decision, district courts routinely look to differences between the provisional and the nonprovisional applications in construing claim terms. *See, e.g.*, *DNA Genotek Inc. v. Spectrum Solutions L.L.C.*, No. 3:21-CV-00516, 2022 WL 17331255, at *20 (S.D. Cal. 2022) (applying *MPHJ* in construing term in nonprovisional application narrowly based, in part, on deletion of explicit disclosure from the provisional); *Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*, No. 4:16-cv-00812ALM-KPK, 2017 WL 4867620, at *6 (E.D. Tex. 2017) (applying *MPHJ* in noting that "even where the specification incorporates in full the . . . provisional application, it is the deletion from the . . . [p]rovisional application that contributes understanding of the intended scope of the final application") (internal quotations omitted). Consistent with *MPHJ* and its progeny,

where the applicant intentionally deleted services from its description of "merchants," the construction of "merchants" should only include goods, consistent with its plain and ordinary meaning (*see infra* Argument § III).

The present case is no different. Like *MPHJ*, a person of ordinary skill would understand that the applicant's intentional deletion of "services" from the provisional was a significant choice that reasonably informed the meaning of the term "merchant" to a person of ordinary skill. That deletion in the nonprovisional confirms the district court's construction. Indeed, the Court even recently confirmed that the incorporation by reference of, for example, one patent into another "does not convert the invention of the incorporated patent into the invention of the host patent." *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1382 (Fed. Cir. 2022). "Rather, the disclosure of the host patent provides context to determine what impact, if any, a patent incorporated by reference will have on construction of the host patent claims." *Id.* That is precisely the analysis applied by the district court, when it considered the full "context" of the provisional and nonprovisional disclosures to determine "what impact" the deletion in the nonprovisional had on the construction of the claims. *See id.*

DDR does not address *Finjan* and its attempts to distinguish *MPHJ* have no merit. Br. 18-19. First, whether the applications in *MPHJ* contained an "express" or lexicographic definition (*id.* at 18) is irrelevant. The relevant inquiry was, as DDR

implicitly acknowledges, the proper scope of the claim in view of the "complete filed specification." *Id.*

Second, DDR wrongly distinguishes *MPHJ* as failing to address whether the nonprovisional disclaimed the scope of the provisional. *Id.* The Court, however, specifically addressed the patent owner's arguments that the statements in the provisional "were not *explicitly disclaimed*, and therefore that they are part of the prosecution history and are properly relied on to explain and limit the claims, even if the passages do not appear in the issued patent." *MPHJ*, 847 F.3d at 1368.

Third, DDR tries to confine *MPHJ* to addressing only "whether the complete filed specification, including the incorporated provisional, *broadened* the scope of the provisional specification." Br. 18. But the Court's holding did not turn on whether the deletion broadened or narrowed claim scope. Instead, it held that "it is the deletion from the '798 Provisional application that contributes understanding of the intended scope of the final application" and "a person of skill in this field would deem the removal of these limiting clauses to be significant." *MPHJ*, 847 F.3d at 1368-69. The district court applied that same standard here in determining the intended scope of "merchants."

Finally, DDR rationalizes that *MPHJ*'s logic results in "either embodiment"—the disclosure from the provisional (goods and services) or the disclosure from the nonprovisional (just goods)—falling within the scope of

"merchants." Br. 18-19. But DDR mischaracterizes the intrinsic record. "Services" are not omitted from a "*one* preferred embodiment" (*id.*); rather, "services" were intentionally removed from the nonprovisional. The written description of the '399 Patent never discusses "services" in the context of what "merchants" purvey. More importantly, DDR's application of *MPHJ*'s holding to this case is wrong. As DDR would have it, when a provisional application defines a term that is later redefined to mean something different, the patent owner should be able to select either definition. This outcome runs opposite to the result in *MPHJ* and the clarity required by a patentee to invoke lexicography.

Applying the proper interpretation of *MPHJ* to this case, the explicit removal of "services" is "significant" and shows the applicant clearly and explicitly clarified that the term "merchants" has the narrower interpretation than the provisional.

## II. The District Court Properly Found That DDR Did Not Establish Lexicography for Its Proposed Construction

Rather than consider the full intrinsic record, DDR myopically focuses on the provisional to argue lexicography. In doing so, DDR ignores the bulk of the intrinsic record that defines and describes the same term as something entirely different. For lexicography to prevail, the patentee must "clearly express an intent" to define the term in view of the entirety of the prosecution history. *Thorner*, 669 F.3d at 1365-66; *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) ("Although an inventor is indeed free to define the specific terms used to describe his or her invention, this

must be done with reasonable clarity, deliberateness, and precision."). DDR cannot demonstrate the required clarity, deliberateness, and precision by looking solely at the *provisional* when the applicant abandoned that definition *in the nonprovisional*. Doing so is legally erroneous, as the standard for lexicography requires *both* "the *specification and prosecution history* to unmistakably manifest" that definition other than the plain and ordinary meaning. *See Shire Dev't, LLC v. Watson Pharms., Inc.,* 848 F.3d 981, 984 (Fed. Cir. 2017) (internal quotations omitted); *see also Jack Guttman, Inc. v. Kopykake Enter., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("Because the patentee provided an explicit definition of 'photocopy machine' in the specification, and *because no other intrinsic evidence casts doubt on that definition*, the patentee's definition controls."). DDR's lexicography argument requires this Court to ignore the portions of the specification and the prosecution history that reflect an unmistakable intent to redefine the term. That redefinition in the nonprovisional gives rise to the applicant's clearly expressed intent to delete services from the definition and redefine the term.

Despite the facial inconsistency between the provisional and nonprovisional applications, DDR claims that its definition from the provisional should prevail. Br. 16. That is wrong for several reasons. *First*, while DDR argues it acted as a lexicographer in the provisional in defining the term "merchant," DDR's proposed construction of "merchant" appears nowhere in the provisional. The provisional

states that "*merchants [are] defined as producers, manufacturers, and select distributors of products or services*." Appx0876. DDR refers to this description from the provisional as a "special definition given to a claim term by the patentee." Br. 13. However, this "special" definition is not what DDR proposed as its construction for the term "merchants." DDR's proposed construction was "*producers, distributors, or resellers of the goods or services to be sold*" to the district court. Appx0580. This interpretation of merchants appears nowhere in either the provisional or nonprovisional application. A construction that was never set forth by the applicant as definitional in the written description cannot be said to clearly express an intent to define the term as such. *Thorner*, 669 F.3d at 1365-66 ("To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term . . . ") (internal quotations omitted).

*Second*, DDR cites no authority requiring that a definition or other evidence in a provisional be favored over that in the nonprovisional. Br. 11-19. DDR also provides no authority for why a patent owner should be allowed to pick and choose which definition in the intrinsic record carries more weight. DDR also identifies no authority for why the definition of "merchants" in the written description should be ignored and demoted over a different definition in the provisional. Nor could it because DDR's arguments run contrary to established law. A single sentence in the provisional does not override the otherwise clear intent of the applicant in the

nonprovisional to describe merchants as purveyors of goods, not services. *MPHJ*, 847 F.3d at 1369; *cf. Finjan*, 51 F.4th at 1382 ("incorporation by reference does not convert the invention of the incorporated patent into the invention of the host patent"). DDR's insistence that the provisional's definition "governs" (Br. 11-12) is wrong when "other intrinsic evidence casts doubt on that definition." *See Jack Guttman*, 302 F.3d at 1361.

*Third*, DDR's attempt to use statements from an IPR proceeding to support its position is both misleading and irrelevant. DDR incorrectly suggests that the PTAB compared the disclosure of "merchants" in the provisional and nonprovisional applications and found the description in the provisional more "definitional." *See* Br. 14-15. This assertion is neither true nor relevant. The PTAB did not opine on whether the disclosure in the provisional or nonprovisional was more "definitional." It only found that, under the broadest reasonable interpretation standard, the statement in the nonprovisional alone did not evidence sufficient intent to invoke lexicography. Appx0749. The PTAB never considered the applicant's shifting description of merchants under the *Phillips* standard, as required here. And under a broadest reasonable interpretation, the PTAB also pointed to an agreement with nonparties in a previous litigation on the construction of "merchants" (Appx0749; Appx0707), which has no relevance in this Court under the *Phillips* standard.

*Fourth*, DDR argues that a parent application to the '399 Patent uses the terms "products and services" in a claim limitation, and thus, the specification for the '399 Patent must include "services" in the scope of the '399 claims. Br. 19. But the parent application's claim language, which specifically recites "products and services" (which the '399 Patent does not), only reinforces that "services" are distinct from goods/products and neither presumptively included in the word "products" nor purveyed by "merchants."

DDR concedes that its proposed construction for the term "merchants" relies exclusively on the lexicography set forth in the provisional. Br. 12-13. But the district court properly determined that DDR failed to meet the exacting standard required to apply the provisional's definition to the term "merchant," as it is used in the '399 Patent.

### III. The District Court's Construction Is Also Consistent with the Plain and Ordinary Meaning of the Term in Light of Both the Intrinsic and Extrinsic Evidence

While the applicant's intent to delete services from the definition of "merchants" in the nonprovisional is unambiguous, to the extent the Court finds any ambiguity, Appellees' construction is consistent with the plain and ordinary meaning in light of intrinsic and extrinsic record. *See Thorner*, 669 F.3d at 1367. The intrinsic and extrinsic evidence confirms that the plain and ordinary meaning of "merchants" are purveyors of goods and not services.

## A. The Intrinsic Evidence Confirms That "Merchants" Are Purveyors of Goods or Products, Not Services

The plain and ordinary meaning of the term "merchants" under *Phillips* is "producers, distributors, or resellers of the *goods* to be sold," not services, consistent with the district court's correct construction. Claim terms are generally given their plain and ordinary meaning, which is the meaning one of ordinary skill in the art would ascribe to a term when read in the context of the claim, the specification, and the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (en banc).

Claim construction begins, as always, by looking at the claim language. *Id.* On its face, claim 1 of the '399 Patent recites that a "commerce object [is] associated with a buying opportunity of a selected one of a plurality of *merchants*." Appx550 (Claim 1). There is no reference to products, goods, or services in the claims—only commerce objects. Appx0550-0552 (26:43-30:28). Thus, the claim language itself does not explicitly illuminate whether a merchant is a purveyor of goods, services, or both—only that merchants provide a type of object.

The specification, however, supplies that clarity. In the description of the invention, under the heading "Merchants," the specification sets forth a definition of merchants as "producers, distributors, or resellers of the goods to be sold . . . ." Appx0548 (22:15-19). This express definition of the term "merchants" is not

ambiguous—it makes apparent that the inventor intended to define merchants as purveyors of goods, not services.

That interpretation is reinforced by every discussion of merchants in the specification. For example, the specification describes the responsibilities of a merchant are to "maintain *products* and arrange them into catalogs" (Appx0540 (6:63-64)), or to "[m]aintain an up-to-date catalog within the system, including all *products* that are available for sale in storefronts serviced by the outsource provider" Appx0548 (22:19-22). The specification further discusses shipping ordered items to customers—further emphasizing that "merchants" only sell goods or products that can be shipped, and not services. Appx0546 (17:4-8) ("Customers will be able to browse a merchant's catalogue and place *items* in their shopping cart 2212. When the customer is ready to checkout 2260, the system will acquire payment information 2262 and shipping information 2264 from the user"); *see also* Appx0509 (Abstract); Appx0518 (Fig. 7); Appx0539 (3:1-16); Appx0540-0542 (6:62-9:45); Appx0543 (12:19-23); Appx0544-0546 (13:3-17:59); Appx0547 (20:13-44); Appx0548 (21:18-22:67); Appx0549-0550 (23:24-24:56, 24:58-26:40). When the specification does refer to "services," it is limited to the context of computer or e-commerce support "services" running on computer servers or "customer service" functions. *See, e.g.*, Appx0548 (21:18-25, 22:33-34).

Indeed, all discussions of the types of objects provided by the merchants in the specification confirm that they are "physical items," which can be "returned" or "shipped" or that have a specific "size and color" typical of goods or products. Appx0540 (6:64-67); Appx0542 (9:6-10); Appx0550 (26:21-22); Appx1419-1420 (81:4-82:16). As the district court noted, a person of ordinary skill in the art in 1998 would understand that services do not have a size or color, and services cannot be shipped. Appx1420 (82:14-82:16) ("obviously, we don't think of services having a size, color, et cetera, and we don't think of services being shipped").

Additionally, in determining the proper construction of the term "merchants," the district court made a finding that the words "goods" and "products" in the specification were used interchangeably, and the specification distinguished them from "services." Appx1358 (20:8-14). Its decision is supported by the fact that the provisional consistently describes services as distinct and apart from both "goods" and "products," indicating the applicant's understanding that goods and products do not include services. Appx0876. As an example, the provisional describes the ability to "cross-sell additional ***products*** *and services* to customers" and that using an outsource provider can "increase the gross margin on their ***goods*** *and services*." Appx0875-0876; *see also* Appx0877. The provisional treats goods and products interchangeably, but in every instance, it distinguishes "services" from those goods and products. The district court characterized this as a "finding of fact." Appx1347.

To this point, DDR articulates no specific argument that this factual finding is clearly erroneous. Br. 21. Rather, DDR simply dismisses it as a "reading of the patent specification," claiming that, as such, it should be reviewed *de novo*. *Id.* While the ultimate question of claim construction—here, the construction of the claim terms "merchants" and "commerce object"—is reviewed *de novo*, that question may have "evidentiary underpinnings" subject to clear error review. *Teva*, 574 U.S. at 326-27. Here, the words "good," "product," and "service" are not claim terms, and as a result, the court was not tasked with the ultimate question of the proper construction of those words. Rather, the court considered the proper construction of the claim terms "merchants" and "commerce object" in light of the intrinsic record. Part of that analysis considered "the meaning of terms in the written description," including "products," "goods," and "services," and the interplay of those terms as used. Appx1358 (20:1-2). With that proper rubric in mind, DDR fails to argue that the district court's findings were clearly erroneous.[3]

In any event, regardless of the standard of review applied, the district court's findings are correct. The district court found that the "written description treats 'goods' and 'products' interchangeably, and it distinguished them from 'services.'"

---

[3] DDR should not be permitted to raise new arguments establishing why the district court's findings are clearly erroneous in its reply. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990) ("[W]e see no reason to depart from the sound practice that an issue not raised by an appellant in its opening brief . . . is waived.").

Appx1358. That interpretation of the written description is correct and has no clear error. DDR in fact conceded that if "products" included "services," then the phrase "products or services" in the provisional would have been redundant. Appx1345 (7:25-8:5). DDR also conceded that the use of the disjunctive in the provisional ("products *or* services") further suggests that "services is not encompassed within the ordinary meaning of products." Appx1346 (8:1-9:24). Thus, on this record, the district court's finding that "goods" and "products" are interchangeable and distinct from "services" is both correct as a matter of law and not clearly erroneous. Appx1358 (20:8-14).

As a result, even if the court mischaracterized its finding as one of fact, that error was harmless. *See* 28 U.S.C. § 2111 (directing appellate courts to review cases without regard to errors that do not affect parties' "substantial rights"); *see also United Cannabis Corp. v. Pure Hemp Collective Inc.*, No. 2022-1363, 2023 WL 3295467, at *3 (Fed. Cir. 2023) (citing *Bridges v. Wilson*, 996 F.3d 1094, 1099 (10th Cir. 2021) ("The appellate court exercises common sense, trying to make a realistic assessment of the practical likelihood that the result in the district court would have been different had the error not occurred.")). The district court would have reached the same conclusion, regardless of whether its finding was one of law or fact, and regardless of which standard of review applies, that conclusion is correct.

## B. The Extrinsic Evidence Supports the District Court's Construction of "Merchants"

The extrinsic evidence further supports the plain and ordinary meaning reflected in the intrinsic record and the district court's construction. Dictionary definitions from the relevant time period establish that, consistent with the intrinsic record, "merchants" dealt in goods or commodities, not services. For example, Appellees' definitions of the term "merchants" consisted of the following:

- "One who buys goods wholesale and sells them retail for profit" (Appx1201);

- "a person whose business is buying and selling goods for profit" (Appx1204-1205);

- "a person who buys or sells commodities for profit; dealer; trader" (Appx1210);

- "a buyer and seller of commodities for profit: TRADER" (Appx1214); and

- "one who buys and sells commodities" (Appx1218).

DDR did not provide any dictionary definitions on the meaning of the term "merchants" to refute the definitions provided by Appellees. Instead, DDR offered definitions of a word ("product") that is not claimed. In addition, some of the definitions of "product" offered by DDR dated from 2022, more than 20 years after the relevant time period. Appx0612-0613. And DDR offered miscellaneous and cherry-picked documents from around the relevant time period—instead of dictionary definitions—that use the term "merchants" or "merchandisers" consistent

with DDR's preferred interpretation. *See* Br. 24-25 (citing Appx0914, Appx0927, Appx0932, Appx0924).[4]

In evaluating the parties' extrinsic evidence, the district court acknowledged that "there's no question that 'products' in certain contexts can have a meaning that could possibly include services." Appx1421. One such example the court identified, the gross national product, includes the value of services. Appx1349. But the district court rightly explained that "the problem for [DDR] is that [DDR] said it is the ordinary meaning," but when thinking of the plain and ordinary meaning, the district court concluded that a person of ordinary skill would think of "manufacturer product," not "gross national product." Appx1349 (11:20-25). The ordinary meaning of the word "products," as the district court put it, "are something solid; they are something that has substance." Appx1345; Appx1349. That interpretation is consistent with Appellees' dictionary definitions. And DDR identifies no error in this commonsense interpretation. *See AlterWAN, Inc. v. Amazon.com, Inc.*, 63 F.4th

---

[4] Moreover, despite DDR's assertion (Br. 23 n.4), Priceline's use of the term "product" in a press release is of little importance to the claim construction analysis. *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 678 (Fed. Cir. 2015) ("Language used in marketing materials directed to potential customers can mean something quite different from the language used in a patent directed to persons skilled in the art."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device.") (emphasis in original).

18, 24 (Fed. Cir. 2023) (explaining that courts are not required to "depart from common sense in claim construction").

The district court also concluded that DDR "made no effort to tie [its proposed] definition with any evidence to the artisan of ordinary skill's perspective." Appx1421 (83:21-24). DDR does not challenge that finding on appeal and should not be permitted to do so in reply. The district court did not clearly err in weighing the parties' extrinsic evidence and finding that Appellees' "numerous definitions from dictionaries" outweighed DDR's evidence. *See* Appx1421-1422 (83:16-84:11). Thus, the district court did not clearly err in rejecting DDR's interpretation as inconsistent with the term's plain and ordinary meaning. *Id.*

## IV. The District Court's Construction of the Term "Commerce Object" Should Also and Separately Be Affirmed

Despite DDR providing minimal attention to the term "commerce object" (Br. 25-27), affirming the district court's construction of this term is equally case dispositive. On that part, the parties agreed in their stipulation of noninfringement. Appx0028. As a result, the district court's proper construction of the term "commerce object" supplies an independent basis on which the Court can affirm, without reaching the construction of "merchants."

The district court's construction of "commerce object" is correct. The term "commerce object" has no plain and ordinary meaning to a person of ordinary skill in the art. And the claims themselves do not refer to "goods" or "products" or

"services." Thus, the district court properly turned to the specification to inform its construction. The court's construction for "commerce object" finds its support in the specification, which defines "commerce object" in terms of a "product" (a "good"), not a "service":

> Such a commerce object will be a *product*, a *product* category, a catalog or an indication that a *product*, *product* category or catalog should be chosen dynamically.

Appx0545 (15:17-20). This definitional phrase clearly evidences the applicant's intent to define "commerce object," and that definition makes no reference to services.

Consistent with that definition, within the e-commerce environment described in the '399 Patent, the specification describes that "commerce objects" are what "merchants" sell:

- "(ii) wherein each of the first web pages displays at least one active link associated with a *commerce object* associated with a buying opportunity of a selected one of a plurality of merchants" Appx0550 (26:53-56); and

- "Such information could include information about the e-commerce outsource provider 2222, information about the merchant offering the current *commerce object* 2224, information about an involved party's privacy policy 2226, or information about an involved party's security policy 2228." Appx0545-0546 (16:65-17:3).

As discussed above, "merchants" are purveyors of goods, not services. *See supra* Argument §§ I-III. And the district court correctly found that the '399 Patent uses "products" and "goods" interchangeably and distinct from "services." Appx1358

(20:8-14). It follows then that a "commerce object," the product a "merchant" purveys, is a good, not a service. As a result, the district court's construction—which rejected DDR's attempt to read "services" into the claim language—was correct.

Instead of beginning, as it must, with the intrinsic record, DDR jumps to the extrinsic evidence to improperly import "services" into the construction of "commerce object." Appx0609 (DDR's proposed construction for "commerce object": "a product (goods or services), a product category, a catalog, or an indication that a product (goods or services), product category, or catalog should be chosen dynamically"). Appellees' previous evidence and arguments concerning the construction of "merchants" and the extrinsic evidence apply equally to "commerce object." *See supra* Argument §§ I-III.

In addition, Appellees' independent evidence for "commerce object" is consistent with the intrinsic record and further emphasizes that a "commerce object" does not include services. Appellees' dictionary definitions for the term "object" all connote something material, tangible, and physically perceptible. Appx1247 ("anything that is visible or tangible and is stable in form"); Appx1252 ("a discrete visible or tangible thing"). A product or good meets these definitions; a service does not.

DDR's extrinsic evidence, on the other hand, is not helpful. DDR did not provide a dictionary definition for "commerce object" or "object" but instead

provided dictionary definitions for "product," a term not at issue for construction. Appx0817-0821; Appx0823-0827; Appx0829. Therefore, only Appellees' extrinsic evidence is relevant and reaffirms that a "commerce object" does not include services.

## **CONCLUSION AND STATEMENT OF RELIEF SOUGHT**

For the foregoing reasons, this Court should affirm the district court's claim constructions for either, or both, terms "merchants" and "commerce object" and the judgment of noninfringement.

DATED: August 11, 2023

*/s/ Jeremy J. Taylor*
Jeremy J. Taylor
**BAKER BOTTS LLP**
101 California Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300
jeremy.taylor@bakerbotts.com

Lauren J. Dreyer
**BAKER BOTTS LLP**
700 K Street, N.W.
Washington, DC 20001-5692
Telephone: (202) 639-7700
Facsimile: (202) 639-7890
lauren.dreyer@bakerbotts.com

Margaret M. Welsh
**BAKER BOTTS LLP**
30 Rockefeller Plaza
New York, NY 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
margaret.welsh@bakerbotts.com

Francis DiGiovanni
**FAEGRE DRINKER BIDDLE &
REATH LLP**
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201
francis.digiovanni@faegredrinker.com

*Counsel for Defendants-Appellees,
Priceline.com LLC and Booking.com B. V.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2023-1176, -1177

**Short Case Caption:**  DDR Holdings, LLC v. Priceline.com LLC, Booking.com B.V.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑     the filing has been prepared using a proportionally-spaced typeface and includes <u>7576</u> words.

☐     the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐     the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>08/11/2023</u>

Signature: <u>/s/ Jeremy J. Taylor</u>

Name: <u>Jeremy J. Taylor</u>

Save for Filing

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2023, this **CORRECTED JOINT PRINCIPAL BRIEF OF DEFENDANTS-APPELLEES** was filed electronically using the Court's Case Management/Electronic Case Filing system, which will send a notification of such filing to all registered participants.

Dated: August 11, 2023

*/s/ Jeremy J. Taylor*
Jeremy J. Taylor